1

2

3

4                                                        **E-FILED on**  8/3/09

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                    SAN JOSE DIVISION

11

12    RYUICHI HIRAIDE,                              No. C-08-04714 RMW

13              Plaintiff,

14         v.

15    VAST SYSTEMS TECHNOLOGY                       ORDER GRANTING IN PART
      CORPORATION, ALAIN LABAT and KYLE            DEFENDANTS' MOTION TO DISMISS
16    PARK, MDV VII, L.P. as nominee for: MDV      PLAINTIFF'S FIRST AMENDED
      VII, L.P., MDV VII Leaders Fund, L.P., MDV   COMPLAINT and GRANTING
17    Entrepreneurs Network Fund VII (A) LP. And   DEFENDANTS' MOTION TO REQUIRE
      MDV Entrepreneurs Network Fund VII (b)       PLAINTIFF TO FURNISH SECURITY FOR
18    L.P., MDV Partners L.L.C. and Seventh MDV    COSTS
      Partners L.L.C.,                             **[Re Docket Nos. 29 and 36]**
19
                Defendants.
20

21

22         Defendants' motions to dismiss the First Amended Complaint and to require plaintiff to

23   furnish security for costs came on for hearing before the court on May 8, 2009. Having considered

24   the papers submitted by the parties and the arguments of counsel, and for good cause appearing for

25   the reasons set forth below, the motion to dismiss is granted in part and denied in part and the

26   motion to require plaintiff to furnish security for costs is granted.

27

28

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

**MOTION TO DISMISS**

**I. BACKGROUND**

The following background facts are gleaned from the First Amended Complaint:

Plaintiff Ryuichi Hiraide is a shareholder of VaST Systems Technology Corporation ("VaST") under the Third Amended Investor Rights Agreement ("Third Amended IRA"). Plaintiff's business in Japan, Gaia Systems Solutions, Inc., also has a significant business relationship with VaST as a distributor of VaST's products in Japan and Asia. In brief, plaintiff contends that VaST was required to provide him with ongoing financial information about the company under the terms of the Third Amended IRA but failed to do so. Plaintiff further alleges that after he began pressing defendants for disclosure of the required financial information, the defendants together, and without notice to him, replaced the Third Amended IRA with a Fourth Amended Investor Rights Agreement ("Fourth Amended IRA"), under the terms of which plaintiff is not entitled to financial information about the company.[1] The Fourth Amended IRA was purportedly adopted by written consent of a majority of shareholders, and under its terms, financial disclosures and information need not be distributed to shareholders holding less than 1,000,000 preferred shares. Plaintiff disputes the validity and effect of the Fourth Amended IRA and contends that he continues to be entitled to the information and reports that are required to be provided to him under the Third Amended IRA.

Two months after plaintiff filed the present lawsuit, defendant Labat and other individuals from VaST traveled to Japan and visited with several existing customers of plaintiff's business, Gaia, without advising plaintiff. On December 18, 2008, defendant Labat met with Toyotsu Electronics (TTE). TTE is related to Toyota Motor Corporation, which is a minority owner of Gaia. During the meeting, defendant Labat advised the TTE officers that VaST would no longer provide "business information" and support to plaintiff or to Gaia. The statement was made to induce Toyota to work directly with VaST and no longer purchase products through plaintiff or Gaia, and was intended to cause severe financial damage to Plaintiff, to harm his personal reputation within the Japanese business community, and to deter the Toyota entities from doing business with plaintiff. During the

---

[1] Defendants have requested the court take judicial notice of the Third Amended IRA and Fourth Amended IRA. The request is granted.

**United States District Court**
For the Northern District of California

1    meeting, defendant Labat also stated words to the effect that plaintiff was "crazy," a statement that is

2    false.  According to paragraph 178 of the First Amended Complaint:

> The clear meaning of this statement was a direct attack on Plaintiff's trustworthiness
> as a businessman – a serious charge in the Japanese business culture.  Mr. Labat then
> told TTE that TTE and any related Toyota entity should no longer do business with
> Mr. Hiraide.  Additionally, Labat stated that to insure that Toyota had continued
> access to VaST information and support, TTE instead should simply work directly
> with VaST.

6    The First Amended Complaint sets forth six claims for relief, the adequacy of which are now

7    challenged by the defendants.  These claims are as follows:

8
       1)   Breach of Contract against defendant VaST;

9
       2)   Breach of the Covenant of Good Faith and Fair Dealing against defendant VaST;

10
       3)   Declaratory Relief that Section 5.6 of the Third and Fourth Amended IRA is invalid

11
            and unlawful and unenforceable against public policy;

12
       4)   Interference with Performance of a Contract against defendant MDV;

13
       5)   Breach of Fiduciary Duty and Fraudulent Concealment[2] against defendants Labat

14
            and Park; and,

15
       6)   Interference with Contractual Relations and Slander against defendants VaST and

16
            Labat.

17

18                                        **II.  ANALYSIS**

19   **A.      General standards for motion to dismiss**

20        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  The

21   complaint must be construed on the assumption that all of its factual allegations are true, even if

22   doubtful in fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The court must

23   determine whether the facts alleged in the complaint, if taken as true, would entitle the plaintiff to

24   some form or legal remedy.  Dismissal of a claim is only proper under Rule 12(b)(6) where there is a

25

26

27   ─────────────────────

28   [2]  It is unclear why the fifth and sixth claims for relief each contain two distinct legal theories for
     recovery instead of alleging each as a separate cause of action.

1  lack of a cognizable legal theory or where there is an absence of sufficient facts pleaded.  <u>Balistreri</u>

2  <u>v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th. Cir. 1988).

3      **B.      Motion to Dismiss**

4          **1.  Motion to Dismiss First Claim for Relief: Breach of Contract**

5          In the first claim for relief, plaintiff alleges that defendant breached the Third Amended IRA

6  by failing to provide financial information to plaintiff as required by the agreement, and failed to

7  provide "the requisite notices" to plaintiff as required under the law and the Third Amended IRA.

8  AC ¶185.   Plaintiff also alleges that VaST continues to refuse to conduct Shareholder Meetings

9  and/or provide notice of actions taken by "consent."  AC ¶187.

10          Defendant seeks dismissal of the breach of contract claim on several grounds.

11              A.  <u>Waiver</u>

12          First, defendants contend that Plaintiff waived his right to financial information by delaying

13  seeking it for more than two years.  Plaintiff argues in opposition that he did not waive his rights to

14  financial information and that the contract required defendant to provide the information, without

15  demand. Plaintiff also points to Section 5.12 of the agreement to preclude an assertion by defendant

16  that plaintiff waived his rights under contract.

17          Whether or not plaintiff waived his right to obtain information under the Third Amended

18  IRA is perhaps a defense to plaintiff's claim for breach of contract, but it does not provide grounds

19  upon which the court could dismiss the claim under Rule 12(b)(6).  Accordingly, the motion to

20  dismiss the breach of contract claim on grounds of waiver is denied.

21              B.  <u>Effect of the Adoption of the Fourth Amended IRA</u>

22          Defendant next argues that the adoption of the Fourth Amended IRA cut off plaintiff's right

23  to the requested financial information because he does not own the threshold number of shares.

24  Under the Fourth Amended IRA, investors who hold 1,000,000 or more preferred shares are entitled

25  to the financial information that plaintiff seeks.  Section 2.1, RJN Exh B.  Defendant's position

26  appears to be that the adoption of the Fourth Amended IRA by consent of the majority of

27  shareholders eliminated plaintiff's right to financial information and waived any prior obligation the

28  company owed to plaintiff to provide the information to him.  <u>See</u> Motion at 3:13 ("As a result of the

**United States District Court**
For the Northern District of California

1   amendment to the investor rights agreement, plaintiff no longer has contractual information rights,

2   and any obligation to provide him with information has been waived") and Reply at 4:17-20

3   (requiring defendant to presently provide plaintiff with financial information to which he is not

4   entitled under the Fourth Amended IRA "would be directly contrary to the wishes of VaST's

5   shareholders, who lawfully voted to amend the contract to foreclose exactly such a result and who

6   have a right under 5.6 to retroactively waive any contractual obligation including any obligation

7   arising from Section 2.1").

8         Plaintiff asserts many arguments in opposition, including that the Fourth Amended IRA is

9   invalid, that the clause in the Third Amended IRA permitting amendment and waiver by action of a

10  majority of shareholders is unconscionable, and that the Fourth Amended IRA operates

11  prospectively only, and not retroactively to deny him the information he was entitled to under the

12  Third Amended IRA.  Plaintiff also raises these issues in his third claim for relief, seeking

13  declaratory judgment.

14        Defendant's motion to dismiss is based upon the express terms of the Fourth Amended IRA,

15  the validity and enforceability of which are challenged by plaintiff.  Resolving these enforceability

16  and validity issues will directly impact the merits of plaintiff's claim for breach of contract, but such

17  resolution cannot occur at this stage of the proceedings on a motion to dismiss.

18                    C.  <u>No Contract Claim for Failure to Hold Shareholders Meetings</u>

19        Defendant's third argument to dismiss the breach of contract claim is addressed to the alleged

20  failure to hold shareholder meetings and acting by shareholder consent without providing notice to

21  plaintiff.  Motion at 9.  Defendant notes that Delaware law specifically authorizes corporations to

22  act through written consent in lieu of shareholder meetings and without notice.  Del. Code Ann., tit.

23  8, §228; <u>Allen v. Prime Computer, Inc.</u>, 540 A.2d 417, 420 (Del. 1988).  Plaintiff does not address

24  this issue in his opposition.

25        Defendant's argument is well-taken.  Moreover, from a reading of the First Amended

26  Complaint, it is not clear that a failure to hold shareholder meetings or provide notice of actions

27  taken by consent of the shareholders constitutes a breach of the Third Amended IRA.  Although

28  Paragraph 187 in the first claim for relief alleges that "Defendant VaST continues to refuse to

United States District Court

For the Northern District of California

conduct Shareholder Meetings and/or to provide notice of actions taken by 'consent,'" implying that the failure to do so amounts to a breach of contract, there is no underlying factual allegation that the contract required the company to do so.  To the contrary, the underlying factual allegations indicate that this obligation is imposed by the corporation's bylaws and not by the Investors' Rights Agreement.  See AC ¶¶120-121 (identifying provisions of the corporation's bylaws require the company to hold annual Shareholder Meetings and setting forth the notice of meeting requirement). It is not obvious how a company's failure to comply with its bylaws can constitute a breach of the Investor' Rights Agreement, and plaintiff has not identified any provision in the Investors' Rights Agreement which contractually obligates the company to comply with the bylaws.

Accordingly, to the extent the first claim for relief asserts a claim for breach of contract based upon VaST's failure to conduct shareholder meetings or provide notice of actions taken by shareholder consent, the claim is dismissed for failure to state a claim upon which relief can be granted.  Leave to amend is granted.

### 2.  Motion to Dismiss Second Claim for Relief: Breach of Covenant of Good Faith and Fair Dealing, against defendant VaST.

The second claim for relief targets the "secret amendment" of the Third Amended IRA. Specifically, the principal allegations in the second claim for relief are:

190.  By the purported secret amendment of the Third Amended IRA, conducted without notice and without due process to purportedly both retroactively and prospectively deprive Plaintiff of his contractual and legal rights and the value of his investment, and attempt to retroactively excuse VaST's prior breaches, VaST has further breached the covenant of good faith and fair dealing and the Third Amended IRA.

191.  Plaintiff is entitled to damages, specific performance of the terms of the Third Amended IRA and preliminary and permanent relief to prohibit Defendant's conduct.

1    Defendants seek dismissal of the second claim for relief, arguing that conduct expressly

2   authorized by a contract does not breach the implied covenant of good faith and fair dealing.  Carma

3   Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 373-74 (1992).

4    In opposition, plaintiff asserts that:

5    The problem with [defendant's] argument is that once again, it ignores the very fact
     that VaST did not comply with the contract– in fact VaST ignored it, withheld the
6    benefits of the contact [sic, contract] and wrongfully denied that its obligations
     existed.  And when confronted with its breach, VaST then attempted to paper over the
7    breach, lying to Plaintiff and as noted above, then using a flawed corporate process to
     eliminate his rights.  Finally, VaST intentionally withheld a copy of the purported
8    unilateral amendment contained in the Fourth Amended IRA until threat of litigation.

9   Opp at 18.

10    Plaintiff's argument goes beyond what is pleaded as the purported breach – the second claim

11   for relief targets the "secret amendment" of the Investors' Rights Agreement without notice to

12   plaintiff.  Section 5.6 of the Third Amended IRA, however, expressly allows for the agreement to be

13   modified by the company and a majority of shareholders, including amendments that could have

14   retroactive application and which would affect minority shareholder's rights.  Section 5.6

15   specifically provides:

16    5.6 Amendments and Waivers.  Any term of this Agreement may be amended and the
     observance of any term of this Agreement may be waived (either generally or in a
17    particular instance and either retroactively or prospectively, only with the written
     consent of the Company and the holders of a majority of the Registrable Securities
18    then outstanding.  Any amendment or waiver effected in accordance with this
     paragraph shall be binding upon each holder of any securities subject to this
19    Agreement ....  The Investors ... acknowledge that by operation of this Section 5.6, the
     holders of at least a majority of the Registrable Securities then outstanding, when
20    acting together with the Company, will have the right and power to diminish or
     eliminate any rights or increase any or all obligations under this Agreement.

21

22   Third Amended IRA at 5.6, RJN Exh A.

23    Moreover, as noted above, Section 228 of the Delaware Code permits corporate action based

24   on the written consent of shareholders without notice or meeting.  The adoption of the Fourth

25   Amended IRA required the consent of a majority of the shareholders.  It was not an act taken by

26   VaST alone.  Plaintiff has not identified any provision in the Third Amended IRA or imposed by law

27   that would have required notice of the pending Fourth Amended IRA to be provided to him.  It

28   therefore appears that a further amendment of the Investors' Rights Agreement, without notice to

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT and
GRANTING DEFENDANTS' MOTION TO REQUIRE PLAINTIFF TO FURNISH SECURITY FOR COSTS—No. C-08-04714 RMW
TER                                                          7

**United States District Court**
For the Northern District of California

1   plaintiff is permitted.  Engaging in such permissible conduct, therefore, cannot support a claim for

2   breach of the covenant of good faith and fair dealing implied into the contract.  <u>Carma Developers,</u>

3   <u>Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 373-74 (1992); <u>Gerdlund v. Elec. Dispensers Int'l</u>,

4   190 Cal.App.3d.  263, 277 (1987); <u>Halvorsen v. Aramark Uniform Servs. Inc.</u>, 65 Cal.App.4th 1383,

5   1390 (1998).  Accordingly, the second claim for relief for breach of the covenant of good faith and

6   fair dealing, to the extent it is based upon the adoption of the Fourth Amended IRA, is dismissed.

7

8   **3.  Motion to Dismiss Third Claim for Relief: Declaratory Relief**

9       The third claim for relief seeks Declaratory Relief that Section 5.6 of both the Third and

10  Fourth Amended IRAs "is invalid and unlawful and otherwise against public policy."  AC ¶193.

11  Plaintiff also seeks declaratory relief that the June 22, 2007 "Action by Written Consent of the

12  Stockholders of VaST Systems Technology Corporation" does not eliminate his rights under the

13  Third Amended IRA.

14      Defendants argue that there can be no claim for declaratory relief where a determination of

15  the breach of contract claim will resolve any question regarding the interpretation of the contract.

16  Defendants cite <u>Duarte & Witting, Inc. v. Universal Underwriters Ins. Co.</u>, 2006 WL 2130743 (N.D.

17  Cal. July 27, 2006), for the proposition that declaratory relief is not an available remedy when the

18  dispute has ripened into a breach of contract claim, and <u>Hood v. Superior Court</u>, 33 Cal.App.4th

19  319, 324 (1995), for the proposition that a declaratory relief claim is superfluous when the issues

20  invoked in the cause of action are "already fully engaged" by other causes of action.

21      Plaintiff counters that he is seeking a specific declaration that Sections 5.6 of both the Third

22  Amended IRA and Fourth Amended IRA are invalid, unlawful and otherwise against public policy.

23  He also seeks an adjudication that the June 22, 2007 "Action by Written Consent of the Stockholders

24  of VaST Systems Technology Corporation" does not eliminate his rights under the Third Amended

25  IRA.

26      Each of these issues will necessarily be resolved in determining plaintiff's breach of contract

27  claim as the issue of the validity and effect of the Fourth Amended IRA is subsumed within the

28  breach of contract claim, as is the validity of Section 5.6 which authorizes revisions to the

United States District Court
For the Northern District of California

Agreement without the consent of the minority shareholders.  To the extent plaintiff's breach of contract claim includes the theory that the Third Amended IRA remains in effect, that he continues to be entitled to financial information thereunder, and that defendant VaST continues to breach the agreement by not providing such information to him, the breach of contract claim overlaps the declaratory relief claim.  Accordingly, the declaratory relief claim is superfluous and defendant's motion to dismiss the claim is granted.

### 4.  Motion to Dismiss Fourth Claim for Relief: Interference with Performance of Contract against defendant MDV

The fourth claim for relief is captioned as one for interference with performance of a contract and is asserted against defendant MDV.[3]  The First Amended Complaint alleges that MDV was involved in an effort to deny plaintiff access to information to which he was entitled under the Third Amended IRA, induced VaST management to ignore the terms of the Third Amended IRA, and acted in concert with defendants Labat and Park to amend the Third Amended IRA without notice to plaintiff.  As a result, VaST did not comply with its contractual obligations and plaintiff suffered damages.  AC ¶¶197-202.  Plaintiff alleges that "[b]y MDV's actions in connection with the purported secret amendment of the Third Amended IRA ... MDV has interfered with Plaintiff's contractual rights." AC¶ 202.

MDV moves to dismiss on two grounds: 1) that the claim fails to allege facts supporting essential elements of the claim for interference with a contract, specifically that the defendant caused a third party to breach a contract with the plaintiff, and 2) that MDV is itself a party to the contract and therefore cannot be sued for the tort of inducing the breach of a contract to which it is a party.  Dryden v. Tri-Valley Growers, 65 Cal.App.3d 990, 999 (1977).  Plaintiff's opposition does not address MDV's motion to dismiss, but at oral argument, plaintiff contended that MDV was not a party to plaintiff's contract with defendant VaST and was instead a third party who could interfere

---

[3]  Paragraph 8 defines "MDV" as a shorthand reference to three defendants: MDV VII, L.P., MDV Entrepreneurs Network Fund VII(A), L.P., and MDV Entrepreneurs Network Fund VII(B) L.P. Each of them is an investor in VaST, under both the Third and Fourth Amended IRAs.

United States District Court
For the Northern District of California

1   with VaST's performance of the contractual duties it owed to plaintiff.  Plaintiff's argument,

2   however, is directly contradicted by the contract itself – MDV is a signatory to the Third Amended

3   IRA.  RJN at Exh. A.

4        Defendant MDV's arguments are well-taken and the fourth claim for relief is dismissed.

5   Plaintiff's counsel suggested at oral argument that the pleading defects could be cured through

6   further amendment.  The court is not optimistic that plaintiff will be able to overcome this pleading

7   deficiency, but since leave to amend other claims has been granted, the court will nevertheless grant

8   plaintiff leave to amend the fourth claim for relief.

9

10        **5.  Motion to Dismiss Fifth Claim for Relief: Breach of Fiduciary Duty and**

11        **Fraudulent Concealment against defendants Labat and Park.**

12        The fifth claim for relief is captioned as one for Breach of Fiduciary Duty as well as for

13   Fraudulent Concealment, even though such claims are separate and distinct legal theories which

14   would require proof of different elements at trial.  Each is addressed in turn, below.

15        A.  <u>Fraudulent Concealment by Labat and Park</u>

16        Defendants seek dismissal of the claim for fraudulent concealment on the ground that the

17   First Amended Complaint does not plead the underlying facts with the requisite particularity

18   required by Rule 9(b).  Defendants further contend that the claim is not sufficiently pleaded because

19   it does not allege that plaintiff relied on the alleged misrepresentation or concealment to his

20   detriment and fails to allege resulting damages caused by the fraud.  Finally, defendants contend that

21   plaintiff has failed to plead facts sufficient to support a claim for punitive damages and that a

22   conclusory allegation that defendants acted with malice, fraud and oppression are insufficient.

23        Plaintiff obliquely addresses the fraudulent concealment allegations at pages 21-22 of his

24   opposition brief, contending that his pleading is sufficient:

25        the Complaint identifies who was taking the actions on the part of the Defendants and
     attaches e-mails that provide the Defendants with notice of the dates that occurred,

26        and explains why the e-mails and phone conversations were fraudulent.  Certainly,
     the Defendants themselves are in possession of internal e-mail and similar

27        communications about their statements and are uniquely in possession of the facts
     concerning their private internal discussions.  There can be no serious question about

28        what Plaintiff is alleging on the fraud claim, and Defendants' [sic, Defendants] have

United States District Court
For the Northern District of California

been put fairly on notice. ... The attached e-mails indicate that Mr. Labat was copied on correspondence.  When Defendant Park spoke to Plaintiff's agent about consulting with VaST "management" there was in fact one obvious choice – Mr. Labat, his superior.  As VaST is well aware, Mr. Park was in frequent discussions with Mr. Labat about the obligation to disclose information and Mr. Park made very clear that Mr. Labat would be involved in decisions in this area.  To the extent that the Court believes clarification for further particularity is necessary, Plaintiff will attempt to comply with any directives as to what the Court believes is required.

Opp. at 21-22.

The court is unpersuaded by plaintiff's assessment.  Rule 9(b) requires that allegations of fraud be pleaded with particularity.  The allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny they have done anything wrong.  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).  Allegations of fraud should specifically include "an account of the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).  The allegations must identify the "who, what, when, where and how" of the misconduct.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003);  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  In addition, where the allegations are asserted against more than one defendant, Rule 9(b) requires that the complaint differentiate the allegations and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  Swartz, 476 F.3d at 764-65.

The pertinent allegations in the First Amended Complaint generally appear from paragraphs 94 through 116.  The gist of these allegations is that on May 31, 2007 and again on June 11, 2007, plaintiff advised VaST that it had failed to honor the Third Amended IRA provisions which required the production of financial information.  AC ¶94.  Plaintiff's agent e-mailed defendant Park requesting production of the information.  AC ¶95.  Defendant Park advised plaintiff's agent "that he would consult with VaST management about providing the information.  It was understood that Defendant Park's consultation would be with, *inter alia*, with Alain Labat."  AC ¶96.  Park did not tell plaintiff's agent that "there was no right to the requested information under the Third Amended IRA, or, that VaST was taking surreptitious steps to eliminate his existing rights, purportedly both

United States District Court
For the Northern District of California

retroactively and prospectively, under a new Fourth Amended IRA and through actions of a majority of the shareholders acting in concert with Company management." AC ¶105. Defendants knew that if plaintiff knew of the Fourth Amended IRA and that it would limit the rights of inspection of financial information to shareholders of 1,000,000 preferred shares and would eliminate plaintiff's rights under the agreement, plaintiff would object and possibly seek legal relief or would speak about this to other minority investors or with potential investors. AC ¶¶107-109. "While Defendant Park was telling Plaintiff that his request for the information due under the contract was being considered, Mr. Park knew this was false." AC ¶ 110. Defendant Park knew that, along with the other Defendants, and VaST's management was intending to not only attempt to retroactively erase the Plaintiff's right to receive financial information already in existence, but to do so on an ongoing basis." AC ¶111. "With Defendant Labat's consent and encouragement, Defendant Park led Plaintiff's agent to believe in 2007 that VaST was honoring the obligations to provide information, and, that the request by Mr. Hiraide was valid and understandable in light of his role as a minority shareholder." AC ¶ 113. "Defendant Park stalled and misled Plaintiff in 2007 in order to deprive him of his rights an the ability to obtain possible judicial relief while Defendants created a paper trail." AC ¶ 114.

From these allegations, it appears that the fraudulent concealment consists of the one representation that defendant Park "would consult with VaST management about providing the information" and that defendants did not disclose the fact that a Fourth Amended IRA was underway which, if approved by consent of majority shareholders, would eliminate plaintiff's right to obtain the financial information he was entitled to under the Third Amended IRA. The only harm alleged is that plaintiff was deprived of the opportunity to object, seek legal relief, or speak about this to other minority investors or with potential investors. AC ¶109.

These allegations do not rise to the level of specificity required by Rule 9(b). No specific facts are alleged to apprise defendant Labat of the specifics of his alleged fraudulent conduct. Moreover, as defendants noted in their motion and reply, there are no allegations of actual damages, or proximate cause, or of facts supporting an allegation of malice, fraud or oppression. Accordingly,

United States District Court
For the Northern District of California

1   the fraudulent concealment claim against defendants Park and Labat is dismissed with leave to

2   amend.

3                    B.   Breach of Fiduciary Duty against defendants Labat and Park

4          The second theory asserted in the fifth claim for relief is a claim for breach of fiduciary duty

5   against defendants Labat and Park.

6          Defendants argue that the amended complaint fails to allege a claim for breach of fiduciary

7   duty.  "To state a claim for breach of fiduciary duty, a complaint must allege sufficient facts to show

8   that (1) the defendant had a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3)

9   that breach was the proximate cause of damages."  Motion at 14, citing Stanley v. Richmond,, 35

10  Cal.App.4th 1070, 1086 (1995).  Moreover, the claim must be pleaded with particularity under Rule

11  9(b) because it is joined together with the fraudulent concealment claim, and relies on the same

12  allegations.  Vess, 317 F.3d at 1103-04.

13         The First Amended Complaint does not allege with particularity that defendants Park and

14  Labat breached their fiduciary duties to plaintiff.  Defendants contend the alleged failure of

15  defendants Park and Labat to notify plaintiff that persons holding a majority of shares intended to

16  act by written consent to amend the Third Amended IRA cannot constitute a breach of fiduciary duty

17  because there was no duty to provide this information.  Defendants cite to Allen v. Prime Computer,

18  Inc., 540 A.2d 417, 420 (Del. 1988), for the proposition that, under Delaware law, actions by

19  majority consent can be taken immediately without prior notice to the minority.  Defendants further

20  argue that company management has no duty of disclosure to a shareholder unless the information is

21  material to the shareholder's voting decision, citing Stroud v. Grace, 606 A.2d 75, 85 (Del. 1992),

22  and that because a majority of shareholders wished to amend the Third Amended IRA, plaintiff's

23  vote was unnecessary.   Defendants also correctly contend that the complaint fails to allege actual

24  damages proximately caused by the alleged breach and that the conclusory allegations of malice,

25  fraud and oppression are insufficient to support a claim for punitive damages.

26         Plaintiff's opposition does not address these identified deficiencies, nor does plaintiff address

27  the legal authorities defendants have cited which undermine his claim for breach of fiduciary duty.

28  Significantly, plaintiff does not respond to the point that Delaware law allows corporate action to be

**United States District Court**
For the Northern District of California

1   taken by written consent without a meeting and without prior notice to the minority shareholders.

2   Del. Code Ann., tit. 8, §228; <u>Allen</u>, 540 A.2d at 420.

3       Defendants thus have the better argument.  The claim for breach of fiduciary duty, to the

4   extent it is based upon fraudulent nondisclosure of information, has not been pleaded with sufficient

5   particularity under Rule 9(b) nor has it adequately alleged actual damages proximately caused by the

6   purported breach.   Moreover, to the extent the claim for breach of fiduciary duty is based upon the

7   nondisclosure of a pending further amendment to the Investors' Rights Agreement, to be

8   accomplished by written consent of a majority of shareholders, the claim is legally flawed because

9   no such duty is owed under Delaware law.  Del. Code Ann., tit. 8, §228; <u>Allen</u>, 540 A.2d at 420.

10   Accordingly, the claim for breach of fiduciary duty is dismissed.

11

12                    **6. Motion to Dismiss Sixth Claim for Relief:  Interference with**

13                    **Contractual Relations and Slander against defendants VaST and Labat.**

14       As was the case with the fifth claim for relief, the sixth claim for relief attempts to set forth

15   two separate legal theories for recovery, interference with contractual relations and slander, even

16   though each is a separate and distinct legal theory which would require proof of different elements at

17   trial.  Each is addressed in turn below.

18       The charging allegations in the sixth claim for relief allege that "in December 2008,

19   defendant Labat traveled to Japan and made the statements to representatives of TTE and possibly

20   others doing business with Plaintiff."  AC ¶220.  "By threatening to 'cut off' Plaintiff and his

21   company, Gaia and thus Plaintiff's customers and disparaging Plaintiff's reputation, Defendants

22   sought to retaliate for the exercise of Plaintiff's rights to information and access to the Courts."  AC

23   ¶221.  "Defendants sought to deprive Plaintiff of his contractual relations and economic advantage

24   with customers and investors in his own company and to intimidate Plaintiff into surrendering his

25   legal rights."  AC ¶222.  "Defendants also sought to convince Plaintiff's business contacts to

26   essentially avoid Plaintiff and Defendants hoped this would have a destabilizing effect on Plaintiff's

27   business and that VaST would ultimately benefit directly, and take away Plaintiff's business."  AC

28   ¶223.

1    The underlying allegations, incorporated by reference into the sixth claim for relief, include

2    the following:

3    Personal relationships are the cornerstone of, and essential to, any business relationship.  AC

4    ¶166.  On or about December 18, 2008, defendant Labat visited with Toyotsu Electronics ("TTE"), a

5    company related to Toyota Motor Corporation and through whom it does its purchasing.  AC ¶168.

6    The meeting was arranged and held without plaintiff's knowledge.  AC ¶169.  During the meeting,

7    Labat advised the officers from TTE that VaST would no longer provide business information and

8    support to Plaintiff, or his company Gaia, nor would it do business with plaintiff or Gaia.  AC ¶171.

9    This statement was made so that Toyota would work directly with VaST and no longer purchase

10    VaST products through plaintiff or Gaia.  AC ¶174.  The statement was intended to damage

11    plaintiff's personal reputation in the Japanese business community and to deter the Toyota entities

12    from doing business with plaintiff.  AC ¶175.  During the meeting, Labat also stated words to the

13    effect that plaintiff was "crazy."  AC ¶176.  "The clear meaning of this statement was a direct attack

14    on Plaintiff's trustworthiness as a businessman – a serious charge in the Japanese business culture.

15    Mr. Labat then told TTW that TTE and any related Toyota entity should no longer do business with

16    Mr. Hiraide.  Additionally, Labat stated that to insure that Toyota had continued access to VaST

17    information and support, TTE instead should simply work directly with VaST."  AC ¶178.  "The

18    severity of this action was magnified by the fact that TTE is a related company to Toyota Motor

19    Corporation and that entity is a minority shareholder in Plaintiff's company.  In essence, Defendant

20    Labat sought to disparage Plaintiff personally in front of both an existing and high profile customer

21    and also indirectly to a minority shareholder in Plaintiff's company."  AC ¶179.

22    A.  Slander

23    Slander is a type of defamation, a false and unprivileged publication made orally which

24    "[t]ends directly to injure [a person] in respect to his office, profession, trade or business, either by

25    imputing to him general disqualification in those respects which the office or other occupation

26    peculiarly requires, or by imputing something with reference to his office, profession, trade, or

27    business that has a natural tendency to lessen its profits."  Cal. Civ. C. §46.  The elements of

28    defamation are an intentional publication of a statement of fact that is false, unprivileged and has a

United States District Court
For the Northern District of California

1  natural tendency to injure or cause special damage.  Smith v. Maldonado, 72 Cal.App.4th 637, 645

2  (1999).  The defamatory statement must be specifically identified and plaintiff must plead the

3  substance of the statement.  Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314

4  (N.D. Cal. 1997).

5      Defendants contend that the allegations in the sixth claim for relief are not sufficiently

6  specific and that the alleged defamatory statement (that plaintiff is "crazy") is a nonactionable

7  statement of opinion.

8      In opposition, plaintiff argues that:

9      [t]he statements by Mr. Labat had a defamatory meaning by innuendo.  In the
       Japanese culture, and in particular in a business setting with members of such a
10     respected company, such a statement by a Chief Executive Officer about one of its
       investors and the President of its own major distributor are on their face, and likely
11     even without innuendo, defamatory.  The clear meaning of the statement was a direct
       attack on Plaintiff's trustworthiness and stability as a businessman – a serious charge
12     in the Japanese business culture. [¶]  On top of this statement, Mr. Labat told the
       recipients that VaST would no longer do business with Plaintiff, again calling into
13     question his trustworthiness, stability and the like.  This was obviously not hyperbole
       or off the cuff opinion.  Mr. Labat knew his statements were not true and by uttering
14     them sought to damage Plaintiff's reputation, impugn his character before TTE and
       Toyota.
15
   Opposition at 23.
16
       In order to determine whether a statement implies a factual assertion, it is necessary to
17
   examine the totality of the circumstances in which the statement was made, including the specific
18
   context in which the statement was made and the reasonable expectations of the audience in that
19
   situation. "  Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995).  It is also
20
   necessary to inquire "whether  the statement itself is sufficiently factual to be susceptible of being
21
   proved true or false."  Id.
22
       Whether the statement at issue is a statement of fact or a statement of opinion is a question of
23
   law.  Gregory v. McDonnell Douglas Corp., 17 Cal.3d 596, 601 (1976); Baker v. Los Angeles
24
   Herald Examiner, 42 Cal.3d 254, 260 (1986).  The California Supreme Court has acknowledged that
25
       the distinction frequently is a difficult one, and what constitutes a statement of fact in
26     one context may be treated as a statement of opinion in another, in light of the nature
       and content of the communication taken as a whole.  Thus, where potentially
27     defamatory statements are published in a public debate, a heated labor dispute, or in
       another setting in which the audience may anticipate efforts by the parties to persuade
28     others to their positions by use of epithets, fiery rhetoric or hyperbole, language

> which generally might be considered as statements of fact may well assume the
> character of statements of opinion.

Gregory, 17 Cal.3d at 601; Baker, 42 Cal.3d at 260.  Notably, if the statement as construed under the totality of the circumstances is reasonably susceptible of a defamatory meaning, then dismissal at the pleading stage is inappropriate.  See Baker, 42 Cal.3d at 260.

Here, the pleaded context is a business meeting, pursuant to which the defendants attempt to discourage plaintiff's business partners/customers from doing further business with plaintiff and to instead to do business directly with defendants.  It is not so clear that in this context, the audience would anticipate the defendant's "efforts to persuade [them] to their positions by use of epithets, fiery rhetoric or hyperbole" so as to turn potentially defamatory statements into nonactionable opinion.  Considering in particular the understanding of the audience to whom the statement was addressed, defendants' statement that plaintiff is "crazy" is not so clearly one of nonactionable opinion.  While the statement could be construed as opinion or hyperbole, it could also be construed as a statement of fact, a defamatory one that could cause harm to plaintiff's reputation in the Japanese business community.  Taking the allegations of the complaint as true, the statements could be defamatory: that plaintiff was not trustworthy, was mentally unstable, was unreliable, and accordingly that the customers should not do business with him any longer.  In the context alleged, the statement that plaintiff is "crazy" is not necessarily mere "imaginative or rhetorical hyperbole" which cannot reasonably be interpreted as stating actual fact.  Therefore, the claim should not be summarily dismissed at the pleadings stage.

The allegations have also been pleaded with sufficient particularity.  The First Amended Complaint identifies the speaker, the approximate date, the context of the business meeting in which the comments were made, and the corporate identity of the attendees, all of which are sufficient to put defendants on notice of the issues to enable preparation of a defense.  Cf. Jones v. Thyssenkrupp Elevator Corp., 2006 WL 680553, *6 (N.D. Cal. March 14, 2006) (citing Okun v. Superior Court, 29 Cal.3d 442 (1981).

Discovery and further proceedings will undoubtedly flesh out the circumstances, but for now, plaintiff has stated a claim for slander.

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT and GRANTING DEFENDANTS' MOTION TO REQUIRE PLAINTIFF TO FURNISH SECURITY FOR COSTS—No. C-08-04714 RMW TER

17

**B.** Interference with Existing or Prospective Contractual Relations

Defendants assert that plaintiff's claim for interference with contractual relations is deficient in that it does not allege that defendants' acts caused a third party to breach a contract with plaintiff. The elements of a claim for interference with contractual relations are: 1) plaintiff had a valid and existing contract; 2) defendants had knowledge of the contract and intended to induce its breach; 3) the contract was in fact breached by the contracting party; 4) the breach was caused by defendant's unjustified or wrongful conduct; and 5) plaintiff suffered damage. Dryden v. Tri-Valley Growers, 65 Cal.App. 3d 990, 995 (1997). Defendants argue that the First Amended Complaint does not allege that plaintiff had a valid and existing contract, or that such a contract was breached, or that any actual damages arose from such a breach.

Defendants also assert that the First Amended Complaint fails to state a claim for interference with prospective economic advantage in that it fails to allege that defendants disrupted any prospective economic relationship with a third party and fails to allege that the defendants' conduct was wrongful by some legal measure other than the alleged interference itself. The elements of a claim for interference with prospective economic advantage are: 1) an economic relationship between plaintiff and a third party; 2) defendants' knowledge of that relationship; 3) that defendant intentionally attempted to disrupt the relationship; 4) actual disruption of the relationship; and 5) damages. Asia Inv. Co. v. Borowski, 133 Cal.App.3d 832, 840-41 (1982). Plaintiff must also plead and prove that the defendant's conduct was wrongful by some legal measure other than the fact of the interference itself. Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (1995).

Plaintiff's opposition essentially boils down to the contention that it is only necessary for him to allege an existing business relationship and attempts by defendants to disrupt it. Opp. at 24-25. He contends that "[t]he essence of tortuous [sic, tortious] interference is the wrongful disruption of business relationships and here, the Court's inquiry should be whether or not the alleged conduct is justified and was a violation of the 'rules of the game,' i.e., unacceptable conduct that crossed the line

United States District Court
For the Northern District of California

1   of intermeddling into the affairs of Mr. Hiraide in retaliation for his filing suit in October 2008."

2   Opp. at 24.

3        Plaintiff's argument is incorrect.  Actual disruption of an economic relationship between the

4   plaintiff and a third party is an essential element to the claim, as is resulting damages.  No such

5   allegations are made in the claim for interference with economic relations.  Accordingly, the claim is

6   dismissed with leave to amend.

7        Finally, defendant contends that plaintiff does not have standing to assert the claim for

8   interference with economic advantage.  The First Amended Complaint alleges that defendants

9   sought to interfere with the contractual and business relationship between Gaia (plaintiff's business)

10   and Toyota.  AC ¶ 174.  Plaintiff does not address this issue in his opposition.  Defendant is correct

11   that plaintiff does not have standing to assert a claim for interference with economic relations where

12   the plaintiff himself was not a party to such economic relationship.  The various allegations in the

13   First Amended Complaint, however, are not necessarily so limited in their terms.  Paragraph 222, for

14   example, alleges that the defendants sought to deprive <u>plaintiff</u> of his contractual relationships and

15   economic advantage with customers and investors in his own company.  AC ¶222.  Several of the

16   underlying allegations, however, do suggest that the business relations involve plaintiff's company,

17   Gaia.  See AC ¶41 (describing Gaia as the largest single seller of VaST products) and AC ¶174

18   (alleging that defendants' statements in its meetings with TTE in Japan "were carried out so that

19   Toyota would then move to work directly with VaST and no longer purchase products through Mr.

20   Hiraide [sic, Hiraide] or his company.").  As noted above, the claim for interference with economic

21   relationships is deficient because it does not allege that any such relationships were actually

22   interfered with and that any damage resulted to plaintiff.  If plaintiff opts to amend the claim to

23   include allegations that economic relationships have in fact been disrupted and that plaintiff has

24   suffered resulting damages, he should take care to ensure that the allegations are limited to such

25   economic relationships in which plaintiff himself is a party, (as opposed to his company Gaia being

26   a party).  If the only economic relationships disrupted are ones to which plaintiff's company was a

27   party, then plaintiff does not have standing to assert such claims in this action.

28

United States District Court
For the Northern District of California

1

2                                 **MOTION TO REQUIRE SECURITY**

3          Defendants' second motion is to require plaintiff to furnish security for costs in the amount of

4   $150,000 on the ground that plaintiff resides out of the country and there is a reasonable possibility

5   that defendants will obtain a judgment in the action.  Defendants rely on Local Rule 65.1-1, which

6   authorizes the court to require the posting of security for costs which may be awarded against the

7   party, and Section 1030 of the California Code of Civil Procedure, which authorizes a court to

8   require a non-resident plaintiff to post security for costs if defendant demonstrates a reasonable

9   possibility of obtaining a judgment.  Defendants contend that $150,000 is a reasonable amount,

10  reflecting the anticipated costs it will incur in defense of this action, plus approximately 10% of the

11  anticipated attorney's fees to be incurred in the course of defense which would be recoverable as a

12  cost because of the attorney's fees clause in the underlying contract.

13         Plaintiff opposes the motion.  Among other reasons, plaintiff argues that there is no good

14  cause to require it to post security because even if defendants prevail there are assets from which

15  defendants could satisfy a judgment, specifically plaintiff's stock in defendant VaST and the ongoing

16  contractual relationship between plaintiff's company (Gaia) and VaST.  Plaintiff does not, however,

17  identify any property in California, or in the United States, that could be used to satisfy an award of

18  costs against it.

19         The purpose of Section 1030 is to afford security for an award of costs which the defendant

20  might otherwise have difficulty in enforcing against a nonresident plaintiff.  Cal. Civ. P. C. §1030,

21  Law Revision Commission Comments.  It is also to enable California residents sued by a non-

22  resident to secure costs in light of the difficulty of enforcing a judgment for costs against one who is

23  not within the court's jurisdiction and to thereby act to prevent out-of-state residents from filing

24  frivolous lawsuits against California residents.  Alshafie v. Lallande, 171 Cal.App.4th 421 (2009).

25         Based on a review of the First Amended Complaint and the parties' contentions on the

26  motion to dismiss, discussed above, the court finds that defendants have a reasonable possibility of

27  prevailing.  If defendants prevail on the contract claim, they will be entitled to an award of costs

28  which may also include some portion of their attorneys' fees which were incurred in defending the

1   contract claims.  Given the apparent absence of assets in California, or in the United States for that

2   matter, and the difficulties that defendants may encounter in seeking to enforce a cost judgment

3   against plaintiff in Japan, it is appropriate to require plaintiff to furnish security for such a cost

4   award.

5           In the court's view, however, the amount sought by defendants is too great and may impose

6   an unfair obstacle to plaintiff in pursuing his claims.  Posting security in the amount of $50,000,

7   however, would more appropriately balance the equities and the interests of the parties.

8   Accordingly, plaintiff shall furnish security in the amount of $50,000 as a condition to maintaining

9   suit.

10                                               **ORDER**

11          For the foregoing reasons, the court grants in part and denies in part defendants' motion to

12  dismiss as follows:

13          1.      Motion to dismiss the First Claim for Relief for breach of contract is DENIED with

14                  regard to the alleged failure to provide financial information and is GRANTED with

15                  leave to amend with regard to the alleged failure to provide notices or hold

16                  Shareholder Meetings;

17          2.      Motion to dismiss the Second Claim for Relief for breach of the covenant of good

18                  faith and fair dealing is GRANTED;

19          3.      Motion to dismiss the Third Claim for Relief for Declaratory Relief is GRANTED;

20          4.      Motion to dismiss the Fourth Claim for Relief for interference with performance of a

21                  contract is GRANTED;

22          5.      Motion to dismiss the claim for breach of fiduciary duty within the Fifth Claim for

23                  Relief is GRANTED with leave to amend;

24          6.      Motion to dismiss the claim for fraudulent concealment, contained within the Fifth

25                  Claim for Relief is GRANTED with leave to amend;

26          7.      Motion to dismiss the claim for interference with contractual relations in the Sixth

27                  Claim for Relief is GRANTED with leave to amend;

28          8.      Motion to dismiss the claim for slander in the Sixth Claim for Relief is DENIED.

**United States District Court**
For the Northern District of California

Plaintiff shall have twenty days leave to file and amended complaint. Any further amended complaint shall not aggregate separate legal theories of recovery under a single cause of action and shall instead allege separate and distinct causes of action for each alleged legal theory of recovery.

The court also grants defendants' motion to require plaintiff to post security. Plaintiff shall post a bond or other security for costs in the amount of $50,000 within thirty days after issuance of this order, failing which the action shall be dismissed.

DATED:        8/3/09

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Derek G. Howard                     dhoward@murrayhowardlaw.com

Gilmur Roderick Murray              gmurray@murrayhowardlaw.com


**Counsel for Defendants:**

Dhaivat H. Shah                     dshah@omm.com


Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.


**Dated:**    8/3/09                               TER
                                          **Chambers of Judge Whyte**

United States District Court
For the Northern District of California

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT and GRANTING DEFENDANTS' MOTION TO REQUIRE PLAINTIFF TO FURNISH SECURITY FOR COSTS—No. C-08-04714 RMW TER